FERDINAND M. J. WALLRATH et al., Respond-
ents, v. WILLIAM L. BOHNENKAMP, et al.,
Appellants.

St. Louis Court of Appeals, December 9, 1902.

1. **Trustees:** VIOLATIONS OF INSTRUCTIONS: DAMAGES. A pe-
tition set forth a contract between plaintiffs, as makers of a deed of
trust, and defendant, as trustee, whereby defendant agreed to see
that the money secured by the deed was applied to the payment of
bills for labor and material, and to the contracts for certain build-
ings on the land covered by the deed, in such a manner as to pro-
tect plaintiffs' rights under their contract with the contractor; and
that by reason of the failure of defendant to exercise "the care and
diligence which he had promised," and by reason of his "negligence
and carelessness" in paying the money to the contractor while ma-
terial and labor liens which the contractor was bound to meet were
unsatisfied, plaintiffs sustained damages, etc. *Held,* that the peti-
tion counted on the contract, and not on the negligence of defendant
as separate from his contract obligation.

2. **Trustees:** EVIDENCE: CONTRACT. Evidence in an action be-
tween the maker of a deed of trust and the trustee examined, and
*held,* sufficient to support a finding of a contract between them,
whereby the trustee was to hold the money obtained under the deed,
and expend it so as to protect the grantor's rights under a contract,
which he had with the contractor who was building houses on the
land covered by the deed.

3. ———: DEED OF TRUST: CONTRACT: VERDICT: PRACTICE,
APPELLATE. Where in an action between the maker of a deed of
trust and the trustee, who retained the money, the evidence (all
verbal) is sufficient to justify an inference that the money has not
all been applied as called for by the contract between the parties, the
Court of Appeals will not disturb a verdict necessarily so finding.

4. ———: ———: ———. A trustee in a trust deed agreed with the
maker that he would hold the money, and pay it out for labor and
materials for certain houses being built on the property covered by
the deed, and not pay the contractor for the houses while there were
any outstanding bills for labor and material. The trustee did pay the
contractor while there were such outstanding bills, and the con-
tractor, an insolvent, failed to apply the money to the payment of
the bills. *Held,* that the grantors in the deed could recover against
the trustee for any such bills they were compelled to pay by reason
of such failure of the contractor to pay them out of the sum ad-
vanced to him by the trustee.

Wallrath v. Bohnekamp.

5. ——: ——: ——. The trustee also agreed not to pay the contractor until the work was completed, but did so. *Held,* that the grantors could also recover against the trustee for any money they were obliged to expend in the completion of the houses, so far as such expenditures were occasioned by a misappropriation by the contractor of the payment to him by the trustee.

6. **Grantor: CONTRACTOR: AGREEMENT.** The ˙grantors and the contractor afterwards settled on an agreed sum which the contractor should pay them for the meeting of such bills. *Held,* that the grantors' recovery against the trustee was limited to such sum.

7. **Error: INSTRUCTION: PRACTICE, TRIAL.** It is not error to refuse an instruction covered in one given by the court of its own motion.

8. **Jury: INSTRUCTION: MEASURE OF DAMAGES.** After a jury had been fully instructed as to the basis of recovery and measure of damages, if any, and had retired, they asked for further instructions as to what items of damages were claimed by plaintiff, whereupon the court gave them an itemized statement of plaintiffs' claims. *Held,* that such action did not vary the previous instructions, and was proper as a mere recapitulation of the plaintiffs' testimony as to the damages.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris,* Judge.

AFFIRMED.

*William Hilkerbaumer* for appellants.

(1) The jury should have been instructed as requested by defendant in his refused instruction, that the default of contractor Lemke in the performance of the building contract was entirely consistent with defendant's non-ability, for without such instruction the cause was not fairly submitted, and the jury was left to consider, and from the verdict apparently did consider, that the measure of defendant's liability was the amount of the indebtedness of the contractor to plaintiffs arising out of a default of the building contract. One of the offices of instructions is to define the issues and to exclude from the jury questions foreign to the case. Newell

v. St. L. Bolt and Iron Co., 5 Mo. App. 253. The refusal of the court to give this instruction, or the omission to include a similar one in its own, was prejudicial to defendant. Wyatt v. Railway, 62 Mo. 408. (2) The instruction, given at the request of plaintiffs, is faulty, in that it authorizes the jury to construe a written contract, the execution or terms of which were nowise in dispute. It is also faulty in permitting the jury to consider parol evidence in connection with a written contract, and to vary the same. Miller v. Dunlap, 22 Mo. App. 97; Spalding v. Taylor, 1 Mo. App. 34.

*Henry H. Oberschelp* for respondents.

(1) The opinion of witness Eidman was properly excluded. He was not qualified as an expert, and this was not a proper subject of expert testimony. Turner v. Haar, 114 Mo. 335. (2) Exception must be made at the time the objectionable ruling is made. R. S. 1899, sec. 727; Bray v. Kremp, 113 Mo. 552. (3) Defendant waived his demurrer to plaintiff's evidence by introducing evidence on his own behalf. McPherson v. Railroad, 97 Mo. 253; Ins. Co. v. Crandall, 120 U. S. 527. (4) There was abundant evidence from which the jury could infer that the damage plaintiff sustained was the result of defendant's breach of contract. Turner v. Haar, 114 Mo. 335. (5) Where the evidence was sufficient to support the verdict, and it received the approval of the trial court, the appellate court will not interfere on the theory that it is based upon passion or prejudice. State v. McGinnis, 158 Mo. 107; State ex. rel. v. Gage Bros. & Co., 52 Mo. App. 464.

GOODE, J.—Plaintiffs employed Paul J. Lemke, a building contractor, to erect two frame cottages on a lot of theirs in the city of St. Louis, Lemke agreeing to furnish all the material and labor required to complete the cottages, for which he was to be paid nineteen hundred and fifty dollars in installments as he progressed with the work. Plaintiffs not having all the

money needed to defray the expense of the houses applied to the defendant Bohnenkamp for a loan of twelve hundred dollars and he procured the money from Gustave and Louisa Morelock, the Wallraths executing a deed of trust on the houses and lot to secure the debt, in which deed Bohnenkamp was trustee. Another loan of three hundred dollars was afterwards advanced by the same parties and secured in the same way. Bohnenkamp retained the money lent on both occasions to see that it was applied to pay for the construction of the cottages and refused to pay it to the Wallraths. According to his own testimony he paid all the first loan but about twenty dollars, and seventy-two dollars of the second one, to Lemke the contractor, paying the balance to laborers and materialmen. Lemke failed to pay for all the labor and material that went into the houses and plaintiffs were compelled to satisfy certain lienable demands on account of his default, and as Lemke was insolvent, they instituted this action against Bohnenkamp for reimbursement of what they paid out above the contract price, on the ground that Bohnenkamp improperly disbursed said loan money retained by him and thereby cause plaintiffs' loss.

The building contract between the plaintiffs and Lemke, which there was testimony to show the defendant saw when the first loan was made, bound Lemke to pay all debts incurred to mechanics or materialmen and allowed plaintiffs to keep back enough of the contract price to discharge whatever obligations of that character he might leave unpaid. In the deeds of trust written by the defendant was a covenant on the part of plaintiffs that the premises were free from mechanics' liens and that the filing of a lien against them should give the beneficiaries the right to foreclose.

The petition, after reciting the above facts, is based on an alleged contract entered into between plaintiffs and defendant, which is set forth as follows:

"That both of said deeds of trust were executed and delivered by plaintiffs with the understanding and agreement between plaintiffs and said Bohnenkamp that

the loans evidenced by said deeds of trusts were made on condition that said Bohnenkamp, for the protection of these plaintiffs as well as the holder of the deeds of trust, was to see to the proper application of the funds raised upon said deeds of trust toward the payment of the balance due for said buildings, so that no mechanics' liens should be filed against said property; that, for this purpose said Bohnenkamp was to handle and disburse said funds himself, instead of turning them over to plaintiffs, to the extent to which they might be needed to pay the balance due and to become due for said buildings; that these conditions were accepted by plaintiffs as a part of the terms of said loans and that said Bohnenkamp in consideration of the commission he was to receive from plaintiffs, undertook and agreed with plaintiffs, as a part of the services to be rendered by him in connection with said loans, to handle the said funds in such manner as duly and fully to protect plaintiffs in the matter of their rights and duties under said building contract and the covenants and stipulations in said deed of trust, to the end especially, among other things, that all claims for work and labor and materials furnished in, to, and upon said buildings should be fully paid, so that no mechanics' liens or other claims might be filed or might remain unpaid in connection with the erection of said buildings under said contract, and that the contractor Lemke, should not be fully paid until all the provisions of said building contract have been fully performed, and the buildings completed according to said contract; and to that end and purpose said Bohnenkamp furthermore promised and agreed to and with plaintiffs to exercise such care and diligence as might be necessary to fully protect these plaintiffs against all loss and damage in the premises."

The petition then states the above-mentioned provisions of the building contract and avers: "All of which said Bohnenkamp knew and agreed with plaintiffs to protect them fully with reference to said provisions and to see that all said labor and material bills

were paid before paying said sums in his custody and possession to said contractor, Lemke, and furthermore promised these plaintiffs not to pay said last installment of $350 to said contractor until said buildings and improvements were completed in full, in accordance with said building contract.''

The petition further states that by reason of the failure on the part of defendant Bohnenkamp to use and exercise the care and diligence in the premises which he had promised plaintiffs to use and exercise, and by reason of the negligence and carelessness of Bohnenkamp in paying out the said money, etc., plaintiffs sustained damage.

The answer, after admitting the execution of the building contract between plaintiffs and Lemke, and the deeds of trust, denied all the other allegations of the petition. It also sets up as defenses that Bohnenkamp acted as the agent of the Morelocks, and that plaintiffs and Lemke for the sum of $174, to be paid by the latter, settled their dispute.

The testimony of the plaintiffs was that when the first loan was made, defendant refused to turn over any money to them, saying he would have to see it was applied to pay for the houses; that they might build a house on some other lot than the one described in the deed of trust, if he gave them the money, but that he would see that all bills were paid; to leave it to him and he would see that everything went right; that it was paid out all right, and similar expressions. About the same talk took place when the second money was borrowed.

Bohnenkamp denies that he made any agreement with the plaintiffs about the first money, but swears the lender, Morelock, told him to see that it was paid out for labor and material furnished for the buildings. He also testified concerning what he said to Wallrath as follows:

''I told him the situation and explained it to him; I said if I would pay him the money now he might take the money and build a house on some other lot. I told

him for the protection of the parties interested I would have to see that the buildings were erected out of this money, that the money was applied to the erection of these buildings. I told him if it was my money that I might entrust it to him, but under the circumstances I could not do that since it was not my money, it was Mr. Morelock's and I would have to see after his interest and see that the money was expended for the erection of these buildings.''

And on cross-examination he swore he undertook to see that the fifteen hundred dollars went into the buildings.

The instructions given and refused are too lengthy to be set out, but will be stated in substance as far as we think necessary in the opinion.

The jury returned a verdict for the plaintiffs for $331.47.

1. The petition counts on a positive agreement of the defendant to pay out the loan money which he retained so as to fully protect the plaintiffs and to prevent a misapplication of any part of the funds by the contractor. It is true there are averments that the defendant acted carelessly in the matter in failing to use the diligence he had promised the plaintiffs to use; but the degree of diligence he promised is stated in another paragraph of the petition to be such as might be necessary to fully protect the plaintiffs against loss and damages on account of lienable debts due for labor and materials; which is equivalent to averring defendant agreed to see that the funds were properly applied, and that is the meaning of the petition, considered as a whole. We, therefore, overrule the assignment of error based on the assumption that the petition counts on the negligence of the defendant and not on a contract, as well as the kindred one relating to the refusal of an instruction requested by the defendant on the theory that he was only liable for negligence.

2. Instead of there being no testimony to prove the contract alleged in the petition, the record abounds in pertinent evidence. In fact the defendant practically

admits the contract, as will be seen by reference to his own testimony set out in the statement, and the attempt to torture an admission that there was no contract out of the testimony of Wallrath is disingenious. Wallrath spoke English poorly and when he said he could get no agreement out of Bohnenkamp, the clear meaning of his expression was that he could not get Bohnenkamp to pay him any of the money although he (Wallrath) was demanding it; that Bohnenkamp kept it all, promising to see it was properly used in paying for the houses, to which arrangement Wallrath was forced to accede.

3. It is strenuously insisted the evidence conclusively shows the entire fifteen hundred dollars went to discharge the cost of the houses and that the sums plaintiffs were compelled to pay lien claimants accrued because the cost exceeded the contract price. The evidence does establish to our satisfaction that Bohnenkamp himself paid all the money retained either for material or to contractor Lemke; but does not so clearly establish that Lemke disbursed all of what he received for labor and materials, and he received the full amount borrowed except about three hundred dollars.

But this court is not to judge of these facts if the testimony warrants different inferences. It was all verbal and we hold it was for the jury to weigh it and having weighed it to draw conclusions about whether all the money plaintiffs borrowed went for legitimate payments. Gannon v. Gaslight Co., 145 Mo. 502; Kingsbury v. Joseph, 94 Mo. App. (St. L.) 298. In the light of the instructions the jury must have found the entire sum was not so applied and must have found also, that the defendant agreed with plaintiffs that it should be; for those were the facts to be found before they were authorized to return a verdict for the plaintiffs.

4. Practically every ruling made by the court during the trial is attacked and we can not undertake to review all the assignments of error seriatim, but will

notice only such as we think important enough to merit comment.

The court told the jury that if they found the defendant agreed with the plaintiffs he would not pay over the money in his hands to the contractor until all bills for labor and material were paid and would protect the interest of plaintiffs in this matter, and further found defendant paid over the money to Lemke while bills for labor and material were unpaid, and that the money so paid to the contractor or any part thereof was not used by him to pay for labor and materials and that thereafter plaintiffs were compelled to discharge unpaid bills to avoid liens, then the defendant was liable to the extent Lemke failed to apply the money received by him from the defendant to the payment of bills for labor and materials, unless they found, as the defendant claimed, that Lemke and the plaintiffs had adjusted their loss at one hundred and seventy-four dollars, in which case defendant's liability could not extend beyond that sum. They were further instructed that if they found Lemke applied all the money he received from Bohnenkamp to the payment of fair and reasonable bills contracted in building the houses, plaintiffs could not recover anything from defendant.

Those charges were fair and accurate.

One item of damages asserted by the plaintiffs was for the cost of completing the houses, which are said to have been left unfinished by Lemke. As to that item, the jury were instructed that if Lemke received money from Bohnenkamp which was never applied in payment of the houses, and further found defendant had agreed not to pay Lemke until the work was completed, and that the sum received by Lemke which he did not apply to the houses exceeded what plaintiffs had been compelled to pay out in order to avoid liens, the defendant was liable to plaintiffs for the cost of finishing the houses in so far as the money received by Lemke from defendant exceeded the sums paid by plaintiffs to avert liens.

As there was ample testimony to show Lemke left the houses unfinished and plaintiffs were forced to

finish them at their own expense, the above charge was a proper one; because plaintiffs were entitled to recover the whole amount they were out either in paying Lemke's bills or to finish his contract, provided their recovery did not exceed what Lemke had misused of the money paid to him by defendant.

An instruction requested by the defendant telling the jury if the entire amount of money borrowed was used in the construction of the dwellings and paid to persons furnishing materials for and performing work thereon the verdict must be for the defendant, although the evidence showed Lemke was in debt to the plaintiffs on account of his default in the performance of his contract, was fairly covered by an instruction given on the court's motion; hence, it was no error to refuse the duplicate.

After the jury had retired to consider of their verdict, they returned and asked further instruction concerning the item on which plaintiffs claimed to recover, and thereupon the court instructed them as follows:

"The plaintiffs claim:

1. A plumbing bill for ................ $ 36.40.
2. Lumber bill for ................... 52.89.
3. Planing Mill bill for ............. 241.43.
4. Cost of base-boards ...............
5. Cost of window fasteners."

Giving that instruction is assigned as error, but it was in exact accord with plaintiff's demand and could only go to the enlightenment of the jury. One objection urged to it is that it permitted plaintiffs to recover for an extra bill paid by them for gas-fittings, which was not required to be done by the contract between plaintiffs and Lemke. As we read the testimony, Wallrath swore there was some extra gas-fitting work ordered which he paid for, but contended the plumber's bill for gas-fitting stated in the petition was part of the work which Lemke agreed to do. It is further said the instruction conflicts with the instruction on the measure of damages theretofore given, which limited the amount

of plaintiff's recovery to the amount misapplied by the contractor, whereas the last one authorized the jury to allow any item mentioned in it regardless of Lemke's misuse of the money paid him by the defendant. The instruction given on the return of the jury simply told them what items the plaintiffs claimed and asked to recover and did not direct the jury to allow those items, nor in any way alter the previous instructions as to what facts they must find before they could return any verdict for the plaintiffs, or as to how they should estimate the damages to be awarded in case they did find a verdict for them. The inference the record warrants is that the jury were unable to remember certainly what items plaintiffs testified they had paid on account of Lemke's default and the court simply recapitulated those items, which was entirely proper.

We do not accede to the contention that the verdict was so manifestly against the evidence as to show prejudice and passion on the part of the jury. If it was against the weight of the evidence that was a matter to be corrected by the trial judge, who must have thought it was not, as he refused to grant a new trial. Defendant himself testified that when he paid the contractor the twelve hundred dollars he knew of only nine hundred dollars in bills that had been settled by him and knew further that certain other bills were then outstanding and unpaid. He said, also, that when he paid the balance of the three hundred dollars to Lemke, he (defendant) expected Lemke to take it and pay it to the planing mill where a bill was owing, but Lemke failed to do so.

Defendant's own testimony tended to warrant a verdict in plaintiff's favor and finding no error in the manner in which the case was tried, we affirm the judgment. *Bland, P. J.,* concurs: *Barclay, J.,* not sitting.